INDUSTRIAL PLUMBING & HEATING SUPPLY CO. v. CARTER COUNTY BANK.—154 S. W. (2d), 432.

Eastern Section. July 8, 1941.

Petition for Certiorari denied by Supreme Court, October 4, 1941.

[1]No opinion for publication.

E. M. Johnston, of Elizabethton, for plaintiff in error.

George F. Dugger and Hallie K. Riner, both of Elizabethton, for defendant in error.

PORTRUM, J.  This suit originated before a justice of the peace in plea of debt due by "cashing a check by the defendant, the property of the plaintiff, on an unauthorized signature of endorsement in the sum of $100.21." The defense is that the signature was in fact authorized by the plaintiff, or that due to a course of dealing and holding out, the agent in signing the endorsement was acting within the apparent authority constituting his endorsement an authorized endorsement.

The case was carried to the Circuit Court and there heard by the Circuit Judge without the intervention of a jury.  He held that the agent acted within his apparent authority upon which the bank could rely, and that the plaintiff was estopped to question the authority of the agent in making the endorsement.  The plaintiff company used a stamp with the company's name and a blank for an authorized agent to countersign, and the agent who countersigned the blank was not the designated agent, but he had been permitted for a long period of time to countersign checks for deposit.  In this case he countersigned the check, not for deposit, but he withdrew the fund and misappropriated it, along with other funds.  In disposing of the case the Trial Judge filed a memorandum in which he says:

"While it is contended that the stamp was to be used only for the purpose of endorsing for deposit to its account, the endorsement produced by the stamp is general, and defendant had no notice of the intent of limitation.

"The check being properly endorsed, the defendant had a right to assume Critchlow had authority to receive the proceeds."

He gave judgment for the defendant from which an appeal in error is prosecuted here for a review.

When the plaintiff opened up an account with the defendant bank, it signed the following identification card:

"Name: Industrial Plumbing & Heating Supply Company By T. T. Hughes." (The stamp was used and the name of the company appears

in print with the word "By" and a line for the signature, which was signed by "T. T. Hughes," and under his signature appears in typewriting his name again, T. T. Hughes.")

"Carter County Bank, Elizabethton, Tennessee. Depositors on signing this card hereby agree to the rules and regulations printed on the reverse side of this card.

"Signature: (See above signature).

"Residence: 212 Watauga Avenue, City. Phone 562-L.

"Business address: 715-17-19 Elk Avenue, City.

"Phone 85.

"Reverse: Rules and Regulations. (All matter not pertinent to the inquiry omitted.)

"6. The signature of persons authorized to draw checks which the bank will recognize in payment of funds or for transaction of other business on this account are given in the proper spaces on the reverse side of this card. Any change in this authority will not be recognized unless written notice is given to this bank."

T. T. Hughes, whose signature appears upon the card, was the managing officer of this company, and signed all checks for the withdrawal of money from the bank. The defaulting agent, W. R. Critchlow, was the bookkeeper, and it had been the custom for Crichlow to countersign all checks received by the company, using the stamp, "For deposit," but he had no authority, based upon the agreement between the bank and the company, as evidenced by the card, to countersign the checks or endorse by countersigning and withdraw the funds.

But it is insisted from time to time he would draw small checks upon the company's account and withdraw small amounts to be used in change, and the bank permitted this by recognizing his signature, and it is shown that when he withdrew the $100.21, he had this apportioned in small amounts, indicating that he was withdrawing it for change. It is established that he did this, but it is not established that the firm as represented by the general manager who had authority by reason of the card to withdraw the funds, namely, T. T. Hughes, knew anything of this practice. In fact, Hughes positively denies any knowledge of this practice. So the bank cannot base an estoppel upon this practice until it brings home knowledge to Hughes that the practice was being carried on, and thereafter it acted upon Hughes's knowledge of the practice. The bank cannot establish a custom and confer apparent authority upon an unauthorized agent by recognizing the unauthorized agent's act over a period of time and then rely upon this custom as conferring apparent authority in the absence of knowledge of the custom to the principal. The doctrine of apparent authority is based upon an estoppel of the principal, and it is the principal's conduct and not the bank's that raises the estoppel. The bank cannot rely upon its own negligence of which the customer is ignorant as the basis of an estoppel against the customer.

172

The applicable rule is stated in the case of Tellico Bank & Trust Company v. Loomis, 147 Tenn., 158-163, 246 S. W., 21, 23, as follows: " 'Two things must occur to create an estoppel by which an owner may be deprived of his property, by the act of a third person, without his assent, under the rule now considered; .(1) The owner must clothe a person assuming to dispose of the property with the apparent title to, or authority to dispose of it; and (2) the person alleging the estoppel must have acted and parted with value upon the face of such apparent ownership or authority; so that he will be the loser if the appearances to which he trusted are not real.' Barnard v. Campbell, 55 N. Y., 456, 14 Am. Rep., 289."

Under the first head of the rule (1) the owner did not clothe the agent with apparent title; the bank had in its possession the card designating the person who had authority to make the endorsement, and under the second head (2) the bank did not act and part with value upon the face of such apparent ownership or authority, and it did not act upon appearances to which it trusted, it was not justified in trusting to appearances, disregarding the express direction contained in the card, required by it, for its protection and the protection of the depositor. The card did not afford protection to the bank alone, and give no protection to the customer. The customer had a right to rely upon the bank's following and carrying out the instructions given upon the card 'which it had required. The bank was not justified in disregarding the express instructions contained upon the card and acting upon appearances. Nor upon its own past conduct in violating the instructions, because the principal had no notice of this violation. It must create an estoppel acting upon the conduct of the principal and not the conduct of the unauthorized agent and itself.

The appellee relies upon and cites 6 Michies' Tenn. Dig., 485, and not the case digested, as follows: "Rule Applies to Clothing Agent with Apparent Authority.—The doctrine of estoppel prevents the real owner of property from recovering, when he has delivered it to an agent clothed with all the indicia of ownership and power of disposition, which the agent used to another's prejudice."

The endorsement by stamp of the company's name without the signature of T. T. Hughes did not clothe the unauthorized agent with the indicia of ownership, and the bank knew this because it was authorized to recognize only the countersignature of T. T. Hughes, and for this reason the unauthorized agent could not use the endorsement to the bank's prejudice.

The Restatement of Agency defines apparent authority as: "The power of an agent to effect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestation and consent to such third person that such agent shall act as his agent." Restatement, Agency (1933), Section 8.

In this case the principal made no manifestation of consent upon which the bank could have acted and been misled. In fact, the check was paid by a teller who had been in the bank but a short time, and he does not testify that he acted upon any manifestation, or any course of conduct between the bank and the agent known to him, but the truth is he paid the check, assuming the agent had authority to countersign it, and without investigating the authority to sign the company's name, which authority was available in the records of the bank. If in doubt, the bank could have protected itself against loss by consulting its records. Where one of two innocent persons must suffer, he whose negligence causes the loss must bear it. The bank was negligent in not ascertaining the agent's authority to endorse the check, when the evidence of authority was available in the bank's records, and the customer relying upon the express authority given was guilty of no negligence, being ignorant of the practice of the bank cashing checks for this unauthorized agent.

It is insisted that this card had authority only in reference to the withdrawal of funds deposited in the name of the company, and had no reference to endorsements to checks made in favor of the company. The card was executed conferring authority to protect the bank and the customer in all transactions requiring the signature of an agent in the transaction of business. It is as important to the bank to protect itself against the unauthorized signature of an agent in the endorsement of a check as in the drawing of a check, and the purpose was to protect both the bank and the depositor in every transaction between them requiring an agent's signature.

When the agent withdrew and appropriated the money, the burden was not upon the plaintiff to trace the money further and show by the proof that the agent did not place the money in the register of the company and then withdraw it. The bank in wrongfully cashing the check caused the loss. The plaintiff is entitled to recover. The judgment of the lower court is reversed and a judgment rendered with costs.

McAmis and Ailor, JJ., concur.