673 P.2d 502

**FIRST NATIONAL BANK IN ALAMOGORDO, Plaintiff-Appellee,**

v.

**Slover T. CAPE and Louise Cape, Defendants-Appellees,**

v.

**Heather Badin MULLINS, the Personal Representative of the Estate of Dora Mullins McKeeman, Deceased, Defendant-Appellant.**

**No. 14758.**

Supreme Court of New Mexico.

Dec. 21, 1983.

**526**

S. Thomas Overstreet, Alamogordo, for plaintiff-appellee First Nat. Bank.

O'Reilly & Huckstep, Mel B. O'Reilly, Ruidoso, for defendants-appellees Cape.

Melton & Puccini, Louis Puccini, Jr., Elizabeth Sanchez, Albuquerque, for defendant-appellant.

## OPINION

FEDERICI, Justice.

This action originated as a Petition for Interpleader brought by the First National Bank of Alamogordo (Bank) in the District Court of Otero County. The Bank interpled all documents held in escrow pertaining to a tract of land with improvements near Cloudcroft, New Mexico, title to which is in issue here. The district court held that title to the property should be vested in Slover T. Cape and Louise Cape (appellees) subject to an equitable resulting trust in the amount of $6,614.55, with interest, in favor of the estate of Dora Mullins McKeeman (estate). All other claims were dismissed with prejudice. Heather Badin Mullins, as personal representative of the estate (appellant) appeals. We affirm.

In May 1977, appellees sold the real estate involved (A-frame cabins) to Donald McKeeman, a single man and prior employee of the appellees. Mr. McKeeman financed the purchase through the use of a real estate contract with monthly payments to be made to appellees. Numerous documents involved in this sale were held in escrow by the Bank. The down payment on the real estate contract was $5,000, $4,500 of which was traceable directly to separate funds of Dora Mullins McKeeman. Additionally, five monthly payments in a total amount of $2,114.55 were made on the contract using Dora Mullins McKeeman's separate funds.

In July 1977, a marriage ceremony was performed for Donald McKeeman and Dora Mullins McKeeman. The question of the validity of that marriage is not at issue here. Four months after this marriage, Mr. McKeeman defaulted on the real estate con-

tract by failing to make the November 1977 payment.

In March 1978, Dora Mullins McKeeman was killed in an automobile accident. On June 19, 1978, appellant filed suit against Mr. McKeeman for an accounting of funds, and for a declaration that the A-frame cabins belonged to the estate. On that same date, a notice of lis pendens was filed against the property. Immediately after Mr. McKeeman was served with notice of the suit he contacted appellees. On June 22, 1978, appellees sent Mr. McKeeman a default letter giving him thirty days to become current on the real estate contract. Mr. McKeeman again contacted appellees to accelerate default and on June 26, 1978 signed an affidavit purporting to give up his claim to the A-frame cabins.

In July 1978, Mr. McKeeman filed for bankruptcy. This temporarily stayed any further action in State court against Mr. McKeeman. Appellant obtained a court order allowing her to proceed in State court. After several proceedings in the State court, the trial court in the original case held that the estate would be deemed the purchaser of the realty and could assume all rights and obligations as purchaser under the real estate contract. A court-appointed Special Master transferred the A-frame cabins from Mr. McKeeman to the estate by warranty deed. This action, however, did not involve appellees and therefore the holding only determined the rights to the A-frame cabins as between appellant and Mr. McKeeman. Thereafter, appellant continually offered to bring all payments current on the real estate contract. All such offers have been refused by appellees.

Subsequent to a trial on the merits in the case at bar, the United States Bankruptcy Court for the District of New Mexico filed a memorandum opinion and final judgment against Mr. McKeeman, denying dischargeability of the debt on the A-frame cabins. The bankruptcy court reached this determination on the grounds that Mr. McKeeman's actions in giving up his rights to the A-frame cabins to appellees were made in an attempt to defraud appellant of the estate's interest in the property. The memorandum and order opinion of the United States Bankruptcy Court was not available to the parties in the case before us at the time of trial.

The trial court in the present case filed a judgment and a supplemental judgment in which it held that appellant was entitled to an equitable resulting trust against the A-frame cabins in the amount of $6,614.55, with interest, from June 19, 1978, the date of the recording of the lis pendens. The court further held that the real estate contract would not be reinstated and that all escrowed documents should be released to appellees. It is from that judgment and supplemental judgment that this appeal is taken.

■ Appellees raise as a threshold issue the technical sufficiency of appellant's brief in chief. Substantially the same argument was raised in *Huckins v. Ritter,* 99 N.M. 560, 661 P.2d 52 (1983). In that case, we stated that a technical violation of our rules will not preclude this Court from considering an appeal as long as the briefs, when considered with the transcripts and the record, are sufficient to present the essential question for review on the merits. *See also Petty v. Williams,* 71 N.M. 338, 378 P.2d 376 (1963); *Trujillo v. Tanuz,* 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973); *Ortiz v. Ortiz & Torres Dri-Wall Co.,* 83 N.M. 452, 493 P.2d 418 (Ct.App.1972). *Cf. McLam v. McLam,* 85 N.M. 196, 510 P.2d 914 (1973); *Rael v. Cisneros,* 82 N.M. 705, 487 P.2d 133 (1971); *Springer Corp. v. American Leasing Co.,* 80 N.M. 609, 459 P.2d 135 (1969). We find that appellant's brief in chief is technically sufficient, and when read with the transcript of record, presents the essential question for review on the merits.

■ The primary issue on appeal is whether the district court erred in not ordering a reinstatement of the real estate contract. Real estate contracts containing the type of forfeiture provisions at issue here are generally enforceable in New Mexico. Upon default, the vendor may terminate the contract, regain possession of the property, and retain the payments made

prior to default. An exception to the enforceability of such forfeiture provisions is recognized when enforcement of the literal terms would result in a forfeiture or unfairness which would shock the conscience of the court. *Huckins v. Ritter,* 99 N.M. 560, 661 P.2d 52 (1983); *Hale v. Whitlock,* 92 N.M. 657, 593 P.2d 754 (1979); *Eiferle v. Toppino,* 90 N.M. 469, 565 P.2d 340 (1977); *Bishop v. Beecher,* 67 N.M. 339, 355 P.2d 277 (1960).

■ The facts here support the result reached by the trial court. They do not support an exception to the general rule. The real estate contract at issue was entered into between appellees and Donald McKeeman, an unmarried man. The contract contained a forfeiture provision of a type which is enforceable in New Mexico. Two months after the formation of the contract Donald McKeeman and Dora Mullins McKeeman were purportedly married. Neither appellant nor Dora Mullins McKeeman were parties to the real estate contract. Donald McKeeman defaulted on the contract in November 1977, four months after the marriage ceremony and four months prior to Dora Mullins McKeeman's death. The first tender offer by appellant was made after the real estate contract had been in arrears for eight months. The trial court found neither evidence that appellees had knowledge of purchase funds being advanced by anyone other than Donald McKeeman, nor that Donald McKeeman was holding title for the benefit of Dora Mullins McKeeman. The trial court also found no convincing evidence of an unlawful conspiracy between appellees and Donald McKeeman to deprive Dora Mullins McKeeman or her estate of any lawful interest in the A-frame cabins. Additionally, no evidence was found that would contradict the presumption that appellees and Donald McKeeman dealt with each other in good faith in conformity with honest dealings between parties engaged in arms-length transactions. The evidence in the record is more than sufficient to support these findings of the trial court.

In view of the facts recited and found by the trial court and, of the status of appellant as an individual who was not a party nor who represented a party to this contract, the legitimate use of real estate contracts as a worthy financing method in New Mexico would be jeopardized, should appellees be denied the rights for which they contracted. As this Court has stated:

> [C]ontracts such as this are utilized as devices to allow purchases of property with very small down payments. This is on the theory that in gaining the advantage of the elimination of the larger initial investment, the grantee must forego whatever advantage he might obtain by reason of the delays incident to foreclosure and redemption. Admittedly, there may be some disadvantages to this type of contract, but it is felt that the advantages far outweigh them when the benefits, which are derived by thousands of people who have been enabled to purchase property by merely paying for it over many years in a manner likened to rent, are considered.

*Bishop v. Beecher,* 67 N.M. at 342, 355 P.2d at 279.

■ Appellees, realizing the poor economic conditions which existed in the Cloudcroft area, felt no need to foreclose on their ex-employee, Donald McKeeman, but once it became apparent to appellees that Donald McKeeman was not to be the party benefited by their generosity, they properly exercised their rights under the real estate contract. The exercise of those contractual rights, based upon the record in this case, does not result in an unfairness which shocks the conscience of the court.

Appellant raises other issues on appeal concerning the amount of the resulting trust created in favor of the estate and the trial court's denial of appellant's motion for a new trial. We find substantial evidence in the record to support the trial court in creating a resulting trust in favor of appellant in the amount of $6,614.55. We further find that the trial court acted properly in denying appellant's motion for a new trial. The newly discovered evidence of-

fered as a basis for the motion is merely the culmination of litigation to which appellees were not a party, and would not, in any event, change the result reached by the trial court should a new trial be granted. *See Hill v. Burnworth,* 85 N.M. 615, 514 P.2d 1312 (Ct.App.1973).

The judgment of the trial court is affirmed. Each of the parties shall bear their own attorney fees. Appellees shall recover their costs on appeal.

IT IS SO ORDERED.

PAYNE, C.J., and SOSA, Senior Justice, concur.